PER CURIAM.
We have for review a referee’s report recommending that Koko Head be found guilty of professional misconduct and sanctioned by an admonishment with probation. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee’s recommendations as to guilt and award of costs. For the reasons discussed herein, we find that Respondent acted deliberately or knowingly and therefore disapprove the referee’s finding that Respondent acted negligently. We disapprove the referee’s finding that Respondent’s misconduct constitutes minor misconduct. We also disapprove the referee’s recommended sanction of an admonishment with probation and, instead, impose a ninety-one-day suspension. We approve the referee’s recommendation of imposing probation for one year, which shall commence upon Respondent’s reinstatement to The *294 Florida Bar. Further, we approve the referee’s recommendation that Respondent shall complete at least five hours of continuing legal education by attending The Florida Bar’s Ethics School and also a Florida Bar professionalism course.
FACTS
The Florida Bar filed a complaint against Respondent, Koko Head, which consisted of two counts. A referee was appointed, who held hearings and made the following findings and recommendations.
Count I, The Commercial Tenant Dispute. Chris Johnson and his attorney, Margaret Wharton, filed Bar complaints against Respondent based on events that transpired during a fiercely contested commercial tenant eviction. Wharton is Respondent’s opposing counsel and Johnson is a third party adverse to Respondent’s client. In this count, three areas of Respondent’s conduct were examined.
First, Wharton’s client, Johnson, traveled to the leased premises on March 19, 2009. The premises were previously occupied by the defaulting tenant, Nations Fence (Nations). Johnson and his company, Superior Fence & Rail of North Florida, were competitors of Nations but were negotiating to purchase Nation’s assets, fixtures, inventory, and current job contracts. Johnson went to the premises to pick up “furniture, fixtures, equipment and inventory.” He had a letter signed by the insolvent tenant identifying him “as an authorized agent” of the tenant. Johnson asserts that Respondent illegally and unethically prevented him from removing items from the leased premises, as Respondent claimed a landlord’s hen for his client.[1]
At the same time Nancy Allen, who was an employee of the defaulting tenant, Nations, visited the leased premises to retrieve business records to respond to a sales tax audit. Allen testified that she told Respondent and the landlord, James Lucas (who was Respondent’s client), that she needed the books and records for the audit. Allen stated that both of them did not permit her to take the items.
The facts were unclear as to whether the landlord, Nations, or Johnson had a superior interest to the furniture, fixtures, or inventory in the leased premises. The referee noted that Nations was in default of the lease and concluded that the landlord had a statutory lien on the tenant’s property that attached when the property was brought onto the premises. Also, the referee stated that the landlord’s lien was possessory (the landlord would have lost his lien if the property was removed from the premises), so Respondent’s client had a direct interest in preserving his landlord’s lien and preventing the removal of property from the leased premises. On that date, Respondent prevented everyone from removing any property from the premises. The referee found that Respondent did not commit any ethical misconduct by preserving the status quo until matters could be reviewed by a court.
The Bar alleged that Respondent violated Rules Regulating the Florida Bar 4-3.3(a), regarding candor towards the tribunal, and 4-8.4(c), regarding dishonesty, fraud, deceit, or misrepresentation. Before the referee, the Bar contended that Respondent misrepresented that he made certain business records of the defaulting tenant available to the defaulting tenant’s employee, Allen, on March 19, 2009, when *295 he in fact denied the tenant access to those records on that date. The Bar asserts that the misrepresentation appears in Respondent’s Affidavit of Compliance that he filed with the court in the eviction case. Respondent denied the Bar’s allegation and testified before the referee that he expressly made the records available to the defaulting tenant on that date.
Allen, the defaulting tenant’s comptroller, testified that she arrived about 9:00 a.m. to pick up the files needed for the tax audit. Allen’s employer, the defaulting tenant, had asked her to retrieve the files. Allen drove to the leased premises in her car with her husband. Another Nations employee drove a truck to help transport the files. Allen brought banker’s boxes so she “could at least get the '08 job files so I could try to configure or put together sales tax reports for later '07, early '08.” When she arrived, she stated that she was there to gather the files, but the landlord denied her access. Allen testified that she was there through the lunch hour until about 2:30 or 3:00 in the afternoon, waiting almost six hours to retrieve the records. She ultimately told the truck driver to leave, knowing that she could take a significant number of files in her car. When Respondent arrived at the premises, he did not allow Allen to remove any files.
Whether Respondent improperly denied Allen access to the corporate books and records is not the issue in this count. The disciplinary issue is whether Respondent misrepresented those facts in his Affidavit of Compliance filed with the court on March 27, 2009. In the affidavit, Respondent asserted that he “told her she could take all the files.” Respondent maintains that Allen’s contentions are false. The referee found Respondent’s testimony on this issue not credible and noted that Respondent’s testimony directly conflicts with the plain language of an email he sent to Allen that evening.[2] Accordingly, Respondent’s statement in the Affidavit of Compliance is inaccurate and untrue. The referee recommended finding Respondent guilty of violating Rule Regulating the Florida Bar 4-3.3 for filing the inaccurate and untruthful affidavit with the court.
Second, Wharton contended that Respondent misrepresented whether a complaint for distress for rent had actually been filed on March 19, 2009, and used that misrepresentation to his client’s benefit. The referee found that Respondent prepared a letter purporting to show a case number for the landlord’s distress proceedings, but at the time the proceedings had not been filed.
The letter contained a case number purporting to be the case number for the distress proceedings, but the case number had nothing to do with the landlord tenant matter. In fact, the distress proceedings had not been filed when the letter was issued. Although Respondent claims the incorrect case number was a simple clerical mistake, no case number could have been provided because the case was not yet filed. The referee found that Respondent provided a fictitious case number in *296 the letter to create a tactical benefit to protect the landlord’s lien.
Respondent testified that he dictated the March 19, 2009, letter. Respondent then went to the premises and, to prevent access to the property, brought the letter which inadvertently contained the false case number. The referee did not accept Respondent’s testimony about how the false information was placed in the letter, i.e., that his staff had mistakenly typed it and he simply had not noticed. This is not a situation where an old document was modified for a new purpose and the wrong case caption was carried over accidentally. The referee found that the only reason the information was on the letter was to make it appear as though a case had been filed that authorized Respondent’s denial of access to the premises.[3] The referee recommended finding Respondent guilty of violating Rule Regulating the Florida Bar 4-4.1 by posting the letter on the leased premises. The referee also stated: “However, such violation was minor and of no consequence in the case. No evidence was presented that showed that the letter was relied upon by anyone or caused damage or harm.”
Third, Wharton stated that Respondent failed to timely communicate about and comply with court rulings. The referee found that Respondent was sometimes difficult to deal with, but his conduct did not rise to the level of flagrant and repeated unprofessional conduct necessary to violate the Bar rules. Ultimately, the referee concluded that “Wharton’s real issue stemmed from her belief that Respondent had caused a wrongful lockout of her client and had helped the tenant’s employee, Mr. Willard, incorporate a business with a deceptively similar name, with Respondent himself as the registered agent. Ms. Wharton maintained that Respondent’s actions demonstrated his active participation ‘in an apparent conspiracy to assume possession of the property and leased premises with the intent to divert those assets to this new corporation and its principal, Bill Willard, even though it is clearly not entitled to do so under the law.’” Also, the Bar argued that Respondent engaged in misconduct that was part of a conspiracy to convert the tenant’s business opportunity to the landlord. The Bar contended that Respondent and the landlord would not turn over the business assets and inventory to Johnson, or the books and records of the business to Allen, because the landlord needed both to steal the tenant’s business.
The referee noted that this theory may be the crux of Wharton’s client’s claims in the pending landlord-tenant action, but it was not proven in these proceedings. The referee found that the Bar failed to prove by clear and convincing evidence that Respondent intended to steal the tenant’s business. In fact, the referee stated that the evidence offered by the parties clearly established that Respondent was only attempting to protect the landlord’s interests.
For count I, the referee recommended that Respondent be found guilty of violating Rules Regulating the Florida Bar 4-3.3(a) (candor towards the tribunal), 4-4.1(truthfulness in statements to others), *297 and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II, Murat Tastan. Respondent was representing Murat Tastan for water intrusion into the client’s condominium. Tastan filed a grievance with the Bar alleging that Respondent had not represented him properly. Tastan testified that Respondent had undermined his case by failing to provide copies of documents including an offer of settlement; drafting poor responses; delaying the case unnecessarily by requesting many extensions; responding late on several occasions to important time sensitive documents; and failing to communicate with him.
Eventually, Respondent withdrew from Tastan’s case. Tastan hired another attorney, Brad Hughes, who settled the case. The correspondence introduced before the referee established that Respondent knew of Hughes’ involvement on behalf of the client shortly after Respondent withdrew.
Tastan’s complaint was initially closed by the Bar as a fee dispute. However, after a failed request for fee arbitration, Respondent sent Tastan a letter on August 9, 2009, attaching a statement of claim for fees allegedly owed and stating that Respondent would not file the complaint if Tastan signed a mutual general release. Tastan did not sign the mutual release. He consulted with his counsel, Hughes, about the letter and forwarded it with a grievance to the Bar. The Bar reopened Tastan’s earlier grievance and asserted that Respondent had violated Rule Regulating the Florida Bar 4-1.8(h) by failing to advise Tastan of his right to independent counsel when attempting to limit his liability through the mutual release.[4]
Before the referee, Respondent argued that Tastan had not alleged malpractice and that the Bar has neither pled malpractice nor proven it. Respondent also claimed that when he sent the letter, Tas-tan was represented by counsel in the water intrusion case. Respondent asserted that he could not violate rule 4-1.8(h) because his former client was represented.
Under the rule, a lawyer may not limit his liability to his former client unless he advises the client in writing that independent representation is appropriate. The referee found the mutual release that Respondent sent to Tastan was an attempt to limit his liability to Tastan. Therefore, based upon the language of rule 4-1.8(h) (“A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.”), the referee found that Respondent had a duty to advise Tastan in writing that independent representation by counsel was appropriate when considering the mutual release and settlement. Further, the referee found that Respondent did not advise Tastan of his right to independent counsel for settlement/release purposes and by this failure, Respondent violated the rule.
For count II, the referee recommended that Respondent be found guilty of violating rule 4-1.8(h) (Limiting Liability for Malpractice).
*298 Recommended Sanction. The referee considered case law and the Standards for Imposing Lawyer Sanctions. As a disciplinary sanction, the referee recommended: (a) imposing an admonishment; (b) imposing probation for one year, during which time Respondent would be required to complete at least five hours of continuing legal education in ethics or professionalism; (c) granting the Bar’s motion for sanctions and ordering Respondent to pay $500 to The Florida Bar’s Client Security Fund,[5] and; (d) payment of The Florida Bar’s costs in these proceedings, which total $3,655.26.
The referee did not find any mitigating factors. As to aggravating factors, the referee found: (a) prior disciplinary offense-a grievance committee admonishment for minor misconduct dated November 12, 2007; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) refusal to acknowledge wrongful nature of conduct; and (f) substantial experience in the practice of law.
On Review. The Florida Bar sought review of the referee’s report, presenting five challenges to the report. Respondent filed a cross-petition for review in which he raises additional challenges.
ANALYSIS
Preliminary Issues. The Bar’s first two arguments focus on substantive issues of landlord-tenant law. When making these arguments, the Bar does not state whether the Court’s resolution of the civil law issues would have any impact on this disciplinary case. The Bar does not specifically assert that Respondent violated any Rules Regulating the Florida Bar by the conduct discussed under these two issues. Thus, it is not apparent why the Bar is presenting these issues before the Court. See Fla. Bar v. Garland, 651 So.2d 1182, 1183 (Fla.1995) (disciplinary proceedings are concerned with violations of ethical responsibilities imposed on an attorney as a member of The Florida Bar).
More significantly, the landlord-tenant dispute was a civil action pending in a lower court when the parties sought review of the referee’s report. Thus, the landlord-tenant issues are more appropriate for determination in the civil case between the underlying parties, rather than being considered in the instant disciplinary case. Accordingly, we reject these two arguments without further discussion.
Rule ¡¡.-8.1(6). Respondent challenges the referee’s recommendation that he is guilty of violating rule 4 — 8.4(c). Respondent claims that the referee’s findings of fact do not support this recommendation. The Court’s standard of review for evaluating a referee’s factual findings is as follows: This Court’s review of such matters is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); *299 see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998).
Respondent’s assertion is without merit. For count I, the referee specifically recommended that the Court find Respondent guilty of violating rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee made the recommendation as to guilt after a lengthy discussion of facts that demonstrate Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.
For example, Respondent stated that he allowed Allen to have access to the business records. Before the referee, Respondent “testified in these proceedings and in his affidavit filed in the eviction matter that he expressly made the records available to the tenant on that date.” Report of Referee at 9. After considering the testimonies and evidence, the referee did not find Respondent’s testimony credible. Allen testified that she waited for approximately six hours, starting about 9:00 a.m. and continuing until the afternoon, yet she was not provided with access to the business records. In addition, Respondent sent Allen an email later that day (5:21 p.m.). The email supported Allen’s testimony that Respondent would not make the records available unless her employer, the defaulting tenant, signed a revocation letter — the revocation letter was provided in that email. In the email, Respondent stated “upon receipt of the signed letter in the form I have prepared, the files you need for the audit will be made available to you.” These facts support the referee’s recommendation of guilt because Respondent engaged in dishonest conduct before the referee and lower court. Respondent’s evening email, which supports Allen’s testimony, shows that Respondent did not tell Allen “she could take all the files” when she was at the premises earlier that day. The facts show that Respondent’s statements before the referee and in the affidavit were untrue.
Respondent also engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation when he used the fraudulent case number in the letter he created and posted on the premises. The letter indicated that a complaint for distress for rent had been filed, when in fact the proceedings had not been filed. The referee found the following facts:
Although the Respondent contends that the incorrect case number was a simple clerical mistake, no case number could have been provided since the case was not even filed until later. More likely, a fictitious case number was given by the Respondent for whatever tactical benefit it might lend to protect the landlord’s lien.
By his own testimony, Respondent admits that he then dictated the March 19, 2009, letter. Respondent then went to the location, and to prevent access to the property, brought with him his March 19, 2009, letter (TFB Exhibit F) containing an erroneous case number. This court does not accept Respondent’s testimony regarding how that information came to be on the letter — that his secretary/wife had mistakenly typed it in and he simply had not noticed. This is not a situation where an old document was modified for a new purpose and the wrong case caption was carried over ac-cidently. This court finds that the only reason that information is on the letter is to make it appear as though a case had been filed which may have authorized Respondent’s denial of access to the premises.
Report of Referee at 11-12.
Immediately after discussing the facts regarding Respondent’s false statements *300 that he made the records available to Allen and Respondent’s fraudulent letter, the referee stated, respectively, that he was recommending that the Court find Respondent guilty of violating rules 4-3.3(a) (candor towards a tribunal) and 4-4.1 (truthfulness in statements to others). The referee also recommended that the Court find Respondent guilty of violating rule 4-8.4(c). The Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Skoureas, 913 So.2d 554, 557-58 (Fla.2005). Here, the referee’s factual findings are based on competent substantial evidence in the record such as testimonies and documents (the email to Allen and the fraudulent letter). Accordingly, we conclude that the referee’s factual findings support the referee’s recommendation that Respondent is guilty of violating rule 4-8.4(c).
The Bar also challenges the referee’s findings with regard to the violation of rule 4-8.4(c). The Bar asserts that the referee erred in finding that Respondent acted negligently rather than intentionally. The Court has repeatedly held that “[i]n order to find that an attorney acted with dishonesty, misrepresentation, deceit, or fraud, the Bar must show the necessary element of intent.” Fla. Bar v. Forrester, 818 So.2d 477, 483 (Fla.2002) (quoting Fla. Bar v. Fredericks, 731 So.2d 1249, 1252 (Fla.1999)). Thus, Respondent must have acted intentionally for Respondent to be found guilty of violating rule 4-8.4(c).
The referee made factual findings which show that Respondent violated the rule. Also, the referee recommended that Respondent be found guilty of violating this rule. Nevertheless, the referee inexplicably stated that Respondent did the acts due to negligence. We conclude that the referee is not supported by competent substantial evidence in finding that Respondent acted negligently. In fact, the referee’s findings demonstrate that Respondent acted intentionally.
For rule 4-8.4(c), the element of intent can be satisfied merely by showing that the conduct was deliberate or knowing. Fla. Bar v. Brown, 905 So.2d 76, 81 (Fla.2005); Fla. Bar v. Fredericks, 731 So.2d 1249, 1252 (Fla.1999); see also Fla. Bar v. Smith, 866 So.2d 41, 46 (Fla.2004) (recognizing that the motive behind the attorney’s action was not the determinative factor but instead the issue was “whether the attorney deliberately or knowingly engaged in the activity in question”). In the instant case, the referee specifically found that the fraudulent case number on Respondent’s letter was not a simple clerical mistake. As the referee noted, there could not have been a case number at the time the letter was posted because the case was not filed until later. Also, Respondent created the letter and posted it on the premises “to prevent access to the property.” Report of Referee at 12. The referee stated “a fictitious case number was given by the Respondent for whatever tactical benefit it might lend to protect the landlord’s lien.” Id. Therefore, Respondent’s deliberate and knowing act of providing a fraudulent letter with an unrelated case number, in order to obtain a tactical advantage for his client, demonstrates that he acted intentionally. As the referee stated, “the only reason that information is on the letter is to make it appear as though a case had been filed which may have authorized Respondent’s denial of access to the premises.” Id. (emphasis omitted).
Accordingly, we disapprove the referee’s finding that Respondent acted negligently. Competent substantial evidence in the record and the referee’s own factual findings *301 show that Respondent acted with intent and violated rule 4-8.4(c).
Rule U-3.3. Respondent argues that the referee’s factual findings do not support the referee’s recommendation that Respondent is guilty of violating rule 4-8.8 (candor towards the tribunal). The Court has stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. Shoureas.
The referee found that Respondent filed an untruthful affidavit with the civil court, in which he claimed that he made the business records available to Allen when she came to the premises on March 19, 2009. As previously discussed, Respondent’s email to Allen and her testimony support the referee’s finding that Respondent did not provide her with access to the records when she was at the premises that day. We conclude that these facts support the recommendation that Respondent is guilty of violating rule 4-3.3. Although Respondent asserts that he provided the business records to Allen at a later date, his argument is misguided. The point is that Respondent made a false statement in the affidavit by claiming that he made the records available to Allen on March 19, 2009. The issue is the truthfulness of Respondent’s statements; it is immaterial that he made the records available to Allen at a later date. Accordingly, we approve the referee’s recommendation that Respondent be found guilty of violating rule 4-3.3.
Rule i.l-8(h). Respondent asserts that the referee’s factual findings for count II do not support the referee’s recommendation that Respondent be found guilty of violating rule 4.1 — 8(h) (Limiting Liability for Malpractice). As previously stated, the standard of review for such a challenge is whether the referee’s factual findings are sufficient under the applicable rules to support the recommendation as to guilt. Shoureas.
Respondent argues that he was not required to inform his former client, Tastan, in writing, that Tastan might want to seek independent representation or advice when Respondent sent him the August 11, 2009, correspondence. Respondent claims that the rule does not apply to his circumstances because Tastan had not filed a malpractice action against him. Further, Respondent attempts to characterize the situation with Tastan solely as a fee dispute. However, Tastan’s Bar complaint alleged that Respondent had not represented him appropriately in his water intrusion case. In addition, Tastan provided several examples in his testimony about Respondent’s allegedly inadequate service. Tastan believed that Respondent committed malpractice. Thus, despite Respondent’s current arguments, his situation with Tastan involved allegations of malpractice.
Next, Respondent asserts that he did not violate the rule because Tastan had an attorney. However, Respondent sent the letter directly to Tastan, which included a civil complaint for fees allegedly owed. In the letter, Respondent informed Tastan that he would not file the complaint if Tastan signed a general release. Respondent admits that he did not advise Tastan, in writing or otherwise, that independent representation could be appropriate to assist Tastan in considering Respondent’s proposal. See Fla. Bar v. Jordan, 705 So.2d 1387 (Fla.1998) (finding a violation of rule 4-1.8 where respondent failed to advise client to seek independent counsel during discussions of settlement of client’s potential malpractice claim against respondent). Tastan felt threatened by Respondent’s letter, so he forwarded it to the Bar. The fact that Tastan had a successor attorney in the underlying water intrusion case *302 did not remove Respondent’s duty to inform Tastan that -he might want to seek independent representation regarding the potential malpractice issues.
Accordingly, based on the facts found by the referee, we approve the referee’s recommendation that Respondent be found guilty of violating rule 4-1.8(h).
Minor Misconduct. The Bar challenges the referee’s finding that Respondent’s dishonest acts constitute minor misconduct.[6] The Bar asserts that Respondent engaged in serious deceptive behavior. We agree.
The referee found that the affidavit Respondent filed with the circuit court was false. Further, the referee found that Respondent testified untruthfully concerning that matter during the disciplinary hearing. Thus, Respondent engaged in dishonest conduct before the circuit court and the referee. Competent substantial evidence in the record supports the referee’s recommendation that Respondent be found guilty of violating rule 4-3.3 (candor towards the tribunal) for submitting the untruthful affidavit.
Next, Respondent created a fraudulent letter and posted it on the leased premises. He drafted the letter with a fictitious case number so he could gain a tactical advantage in the landlord-tenant dispute — he sought to create the appearance that he had already filed a civil case. The evidence supports the referee’s recommendation that Respondent be found guilty of violating rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) for creating and posting the fraudulent letter.
By these acts, Respondent has engaged in severely dishonest conduct. Further, with regard to violations of rule 4-8.4(c), the Court has repeatedly stated that “basic fundamental dishonesty ... is a serious flaw, which cannot be tolerated.” Fla. Bar v. Rotstein, 835 So.2d 241, 246 (Fla.2002). Dishonesty cannot be permitted “by a profession that relies on the truthfulness of its members.” Id. (quoting Fla. Bar v. Korones, 752 So.2d 586, 591 (Fla.2000)). “Dishonest conduct demonstrates the utmost disrespect for the court and is destructive to the legal system as a whole.” Fla. Bar v. Head, 27 So.3d 1, 8-9 (Fla.2010).
In addition, the Court has plainly stated that it “does not view violations of rule 4-8.4(c) ... as minor.” Head, 27 So.3d at 8. In fact, rule 3 — 5.1(b), “Minor Misconduct,” clearly provides:
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
[[Image here]]
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent ....
(Emphasis added.) Accordingly, as there are no unusual circumstances present that explain or excuse Respondent’s dishonest conduct, we disapprove the referee’s finding that Respondent’s misconduct was minor misconduct.
Disciplinary Sanction. The Bar argues that the referee’s recommended sanction, an admonishment with probation, is not supported and that the *303 appropriate sanction is a ninety-one-day suspension. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
In contrast to the Bar, Respondent asserts that the Court should approve the referee’s recommended sanction. He argues that he did not intentionally engage in misconduct and that his misdeeds merely amount to minor misconduct. As previously discussed, we conclude that Respondent acted intentionally when he committed the misconduct. Also, his dishonest acts constitute serious misconduct. He filed a false affidavit with the circuit court. Respondent testified untruthfully before the referee. Further, he drafted and posted the fraudulent letter on the leased premises to mislead others into believing that he had already filed a civil case, which provided him with a tactical advantage.
In addition, the referee recommended finding Respondent guilty of violating rules 4-3.3(a) (candor towards the tribunal), 4-4.1 (truthfulness in statements to others), 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-1.8(h) (limiting liability for malpractice). The referee found six aggravating factors. No mitigation was found. Considering these recommendations as to guilt and the finding of six aggravating factors, the disciplinary sanction of an admonishment is not supported by the standards and case law.
Based upon the Florida Standards for Imposing Lawyer Sanctions and Respondent’s knowing conduct, a suspension is appropriate.[7] Under standard 7.0, “Violations of Other Duties Owed as a Professional,” standard 7.2 provides that suspension is “appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.” Respondent caused potential injury to the public and the legal system by submitting his false affidavit to a civil court, providing his untruthful testimony before the referee, and by creating and posting the letter stating a false case number.
In addition, standard 6.12, under “Violations of Duties Owed to the Legal System,” provides that suspension is appropriate “when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action.” This standard applies due to Respondent’s untruthful affidavit.
Based on case law, a ninety-one-day suspension is appropriate. In Florida Bar v. Lathe, 774 So.2d 675 (Fla.2000), the respondent was suspended for ninety-one days for making intentional misrepresentations to a judge on two separate occasions that he could not attend a deposition. Similar to the respondent in Lathe, Respondent provided false information to a court. Next, in Florida Bar v. Fortunato, 788 So.2d 201 (Fla.2001), the respondent was suspended for ninety days for provid *304 ing false testimony at a disciplinary hearing. Here, Respondent has engaged in more egregious misconduct than the respondent in Fortunato because he has committed three acts of dishonesty. Thus, Respondent merits a more serious sanction than the ninety-day suspension imposed in Fortunato.
Further, Respondent violated rule 4-8.4(c), which case law recognizes as a serious violation of the Rules Regulating the Florida Bar. The Court has firmly stated that the legal profession cannot tolerate misconduct involving dishonesty. Fla. Bar v. Patrick, 67 So.3d 1009 (Fla.2011); Fla. Bar v. Hall, 49 So.3d 1254 (Fla.2010); Head; Rotstein.
After considering the standards and case law, we conclude that the referee’s recommended sanction of an admonishment with probation is unsupported. We impose a ninety-one-day suspension.
CONCLUSION
Accordingly, we approve the referee’s recommendations as to guilt and award of costs. We find that Respondent acted deliberately or knowingly and therefore disapprove the referee’s finding that Respondent acted negligently. We disapprove the referee’s finding that Respondent’s misconduct constitutes minor misconduct. We also disapprove the referee’s recommendation of an admonishment with probation. Instead, Koko Head is hereby suspended from the practice of law for ninety-one days and thereafter until he proves rehabilitation. We approve the referee’s recommendation of imposing probation for one year, which shall commence upon Respondent’s reinstatement to The Florida Bar. Further, we approve the referee’s recommendation that Respondent shall complete at least five hours of continuing legal education by attending The Florida Bar’s Ethics School and a Florida Bar professionalism course.
The suspension will be effective thirty days from the filing of this opinion so that Koko Head can close out his practice and protect the interests of existing clients. If Head notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Koko Head shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Head shall accept no new business from the date this opinion is filed until he is reinstated to the practice of law in Florida.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Koko Head in the amount of $3,655.26, for which sum let execution issue.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. The referee noted that Johnson claimed he was authorized by the defaulting tenant to take possession of the tenant’s assets, yet Johnson acknowledged that the sale had not been consummated.

. Allen testified that the records would only have been made available if and when her employer, the defaulting tenant, signed a revocation letter that Respondent emailed on the evening of March 19, 2009, after Allen left the premises. Respondent's email corroborates Allen's testimony. Respondent sent the email on March 19, 2009 at 5:21 p.m., which is the same day that Allen sought to remove the documents from the premises. In the email, Respondent wrote that "upon receipt of the signed letter in the form I have prepared, the files you need for the audit will be made available to you.” Thus, based on Respondent’s email, he did not make the files available to Allen earlier that day when she was at the premises.

. In addition, Wharton testified that she spoke to Respondent by phone on March 19, 2009. When she asked Respondent if he had obtained a distress writ, he replied that he was on his way to obtain one. During the phone call, Respondent gave Wharton the case number that appears on his March 19, 2009, letter. After she spoke to Respondent that day regarding his denial of access to the property, she confirmed both that Respondent had not yet filed a case and that Respondent's purported case number actually referred to a mortgage foreclosure case filed earlier that was unrelated to the instant dispute.

. Rule 4-1.8(h) provides:
(h) Limiting Liability for Malpractice. A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

. In his brief before the Court, Respondent stated that his repeated failures to "promptly coordinate and schedule [a specified] deposition until the week of the final hearing created inconvenience and scheduling problems for Bar Counsel [who] was involved in handling other matters for TFB. The inconvenience and delay was solely the responsibility of Respondent who has accepted responsibility for it. TFB moved for sanctions as a result of the inconvenience to its Bar Counsel which the Referee granted and ordered Respondent Mr. Head to pay $500.00 to TFB’s Client Security Fund. Respondent has already paid the amount and is not appealing this part of the Report of Referee.” Respondent's Answer Brief at 1 n. 2.

. In considering Respondent’s creation and posting of the fraudulent letter, the referee stated that "such violation was minor and of no consequence in the case.” Report of Referee at 12. For the rule violations found under count I, the referee concluded that the "conduct of the Respondent, viewed in light of all of the evidence shows no more than minor misconduct and misjudgments by the Respondent." Report of Referee at 19.

. Respondent acted deliberately or knowingly. Thus, we disapprove the referee’s application of the standards for situations involving negligence.