CANADY, J.,
concurring in part and dissenting in part.
I concur with the majority’s decision to approve the referee’s findings of fact and recommendations of guilt. The record overwhelmingly supports the conclusion that Peter M. MacNamara violated Rules Regulating the Florida Bar 4-1.4 (communication); 4-8.1 (maintaining the integrity of the profession); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, I concur with the majority’s rejection of the finding that MacNamara’s misconduct did not cause harm or prejudice to his client. But I dissent from the majority’s decision to impose a non-rehabilitative suspension followed by probation. I would instead impose a one-year suspension.
MacNamara’s misconduct was not “a single isolated incident in Respondent’s thirty-seven year history as a Florida lawyer.” Majority op. at 167. MacNamara engaged in a lengthy campaign of misrepresentations in an effort to cover up what *174 likely began — but did not end — as an act of negligence in his representation of an estate. “Dishonesty and a lack of candor cannot be tolerated by a profession that relies on the truthfulness of its members.” Florida Bar v. Korones, 752 So.2d 586, 591 (Fla.2000) (quoting Florida Bar v. Graham, 605 So.2d 53, 56 (Fla.1992)). Because truthfulness is so essential to the practice of law, MacNamara’s pattern of misrepresentations warrants at least a one-year suspension and the special conditions recommended by the referee and approved by the majority.
After failing to timely file a federal estate tax return on behalf of his client, MacNamara did not admit his error and take corrective measures. Instead, in December 2005, MacNamara sent an unsigned federal estate tax return to the Internal Revenue Sendee (IRS) and claimed that the unsigned return was merely a “duplicate,” suggesting that a return had been properly filed several months earlier. As the referee concluded, MacNamara’s correspondence with the IRS was “dishonest and misleading.” In October 2006, MacNamara expanded the scope of his cover-up by deliberately misrepresenting a material fact to a state tribunal. MacNamara filed a petition for an extension of time in the probate court, in which he falsely stated that a federal estate tax return had been filed and was pending review by the IRS. Finally, “on multiple occasions” in 2011, MacNamara informed the Bar — in writing — that he “sent to the IRS an original, no tax, estate tax return prior to ... sending the cover letter and unsigned estate tax return on December 16, 2005.” Again, the referee concluded that MacNamara’s assertions “were knowingly false statements.”
The Florida Standards for Imposing Lawyer Sanctions indicate that suspension is the appropriate discipline for MacNa-mara’s repeated misrepresentations. As the majority acknowledges, standard 7.2 provides that a suspension is appropriate in a case such as MacNamara’s because he “knowingly engage[d] in conduct that [was] a violation of a duty owed as a professional and cause[d] injury or potential injury to a client, the public, or the legal system.” Additionally, because Mac-Namara knowingly made a false statement to the probate court in order to secure an extension, standard 6.11(a) applies. That standard provides that disbarment may be warranted where an attorney “with the intent to deceive the court, knowingly makes a false statement or submits a false document.” These standards and our case law make clear that “[a]n officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded from that process.” Florida Bar v. Rightmyer, 616 So.2d 953, 955 (Fla.1993).
But while the majority correctly concludes that a suspension is warranted, the majority errs in relying on Florida Bar v. Head, 84 So.3d 292 (Fla.2012), when determining that a non-rehabilitative suspension is appropriate. In Head, this Court concluded that a ninety-one-day suspension was appropriate where Head — who represented the landlord in a contentious landlord-tenant action — filed in the trial court an affidavit falsely claiming that he had made certain business records available to the defaulting tenant’s comptroller, asserted the same misrepresentation during the disciplinary proceeding, and included a fictitious case number in a letter to the opposing party that was designed to give the impression that a cause of action had been filed. Id. at 294-95.
Contrary to the majority’s characterization, Head’s misconduct was not more serious than MacNamara’s lengthy cover-up. In fact, Head’s dishonesty was more limit *175 ed in scope — he did not attempt to deceive the federal government in addition to a state court and the Bar — and Head’s misconduct did not cause actual harm. See Fla. Standards for Imposing Lawyer Sanctions 12.1(b) (listing “[a]ctual harm to clients or third parties” as an aggravating factor). In Head, the referee expressly found that because there was no showing that “the letter was relied upon by anyone or caused damage or harm,” Head’s attempt to gain a tactical advantage by listing the fictitious case number “was minor and of no consequence in the case.” Id. at 296. Further, this Court concluded that Head “caused potential injury to the public and the legal system by submitting his false affidavit to a civil court, providing his untruthful testimony before the referee, and by creating and posting the letter stating a false case number,” id. at 303, but did not recite any evidence of actual injury.
MacNamara’s misconduct, in contrast, caused actual harm to his client. Due to MacNamara’s failure to communicate with his client, the client was forced to incur the expense of hiring new counsel to complete the administration of her mother’s estate. Once new counsel was hired, MacNamara failed to turn over the client’s file in a timely manner — thereby causing further delay — despite knowing that the state and federal estate tax returns were overdue. Ultimately, due to the delay in filing the estate tax returns, the client paid penalties and interest to the IRS and interest to the State of Florida.
MacNamara’s multiple acts of dishonesty and the harm they caused are analogous to the misconduct at issue in Florida Bar v. Rotstein, 835 So.2d 241 (Fla.2002). In count one of Rotstein’s case, the referee determined that after negligently failing to file a personal injury action, Rotstein did not advise his client when the statute of limitations on her claim had run. Instead, when he realized his error, Rotstein “fraudulently created a letter that he backdated to July 8, 1998, purportedly advising [the client] that he was withdrawing as her representative and that the statute of limitations would run on December 25, 1998.” Id. at 242. Although Rotstein eventually admitted his wrongdoing and offered to compensate his client for her injuries, Rot-stein initially insisted to the Bar — in writing on three separate occasions — that the withdrawal letter was accurate and true. While there were additional charges stemming from other allegations against Rot-stein, this Court concluded that the referee’s recommended discipline of a one-year suspension was merited “[o]n the basis of the violations in count I alone.” Id. at 246. This Court determined that Rotstein’s “basic, fundamental dishonesty” was “intentional and egregious misconduct” that “demonstrated an attitude that is wholly inconsistent with professional standards.” Id. at 246-47.
Florida Bar v. Hmielewski, 702 So.2d 218 (Fla.1997), is also instructive. In that case, this Court determined that a three-year suspension was warranted where Hmielewski repeatedly misrepresented the location of relevant medical records. Despite knowing that his client had taken the records from the Mayo Clinic and not disclosed them during discovery, Hmielewski falsely stated that the client had produced all of the records in his possession and disingenuously asserted to the trial court that the Mayo Clinic had lost the records. As a result of Hmielewski’s dishonesty, “Mayo Clinic was put to substantial trouble and expense in attempting to locate and ascertain the medical information contained in the purloined medical records.” Id. at 220. This Court determined that “Hmielewski’s violations made a mockery of the justice system and flew in the face of Hmielewski’s ethical responsibilities as a *176 member of The Florida Bar,” id., but declined to disbar Hmielewski due to the character evidence presented on his behalf, his lack of selfish motive, and his lack of prior non-minor misconduct. This Court also noted that before the case was referred to the Bar, the trial court imposed sanctions and Hmielewski made some effort to allay the consequences of his misconduct by agreeing to hold his client harmless for the payment of the fine.
Based on these precedents, MacNa-mara’s misconduct warrants at least a one-year' suspension. Just as Rotstein backdated a letter purporting to withdraw from representation, MacNamara intentionally used the word “duplicate” in an attempt to deceive the IRS, his client, and the probate court. Both Rotstein and MacNamara persisted in their dishonesty by submitting false documents to the Bar. And like Hmielewski, MacNamara was indifferent to the harm his dishonesty caused. Mac-Namara knowingly allowed the IRS and new counsel to search for a document that did not exist. The IRS, MacNamara’s client, her new counsel, the probate court, and the Bar were all put to “trouble and expense” by MaeNamara’s false statements and lack of cooperation. Id. at 220. MacNamara’s case materially differs from these precedents only in that MacNamara did not concede that he was guilty of misconduct before the referee or make any effort to compensate the wronged client. As the referee stated during the hearing on the recommendation as to discipline, MacNamara “still doesn’t seem to ... quite get it.”
“The public expects and deserves fairness and candor from attorneys.... If we are to preserve the credibility of our self-regulated profession, we must address breaches of that trust in a manner that is commensurate with the severity of the breach.” Florida Bar v. Cox, 794 So.2d 1278, 1286 (Fla.2001). In this case, the majority has failed to impose a suspension that is commensurate with MacNamara’s calculated and persistent efforts to cover up his professional negligence in blatant disregard for his professional obligations. Accordingly, I dissent from the imposition of a non-rehabilitative suspension.