659 So.2d 1049 (1995)
THE FLORIDA BAR, Complainant,
v.
Myron B. BERMAN, Respondent.
No. 83616.
Supreme Court of Florida.
August 24, 1995.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Arlene K. Sankel, Bar Counsel, Miami, for complainant.
Michael Lechtman, North Miami Beach, for respondent.
Myron B. Berman, North Miami Beach, pro se.
PER CURIAM.
This attorney-discipline proceeding is before the Court on petition of The Florida Bar. We have jurisdiction based on article V, section 15 of the Florida Constitution.
The Bar has filed a petition challenging a referee's recommendation that attorney Myron B. Berman be suspended for ninety *1050 days and pay $5286.52 in costs for his actions in handling money intended as an investment in a corporation. The Bar agrees with the payment of costs, but argues that Berman should be suspended for three years. Berman argues that if suspension is required, it should be for ten days or, at the maximum, thirty days.
We disagree with the referee, the Bar, and Berman and suspend Berman for six months because we find that this sanction serves the purposes of attorney discipline.
This case arises from the Bar's two-count complaint against Berman. The case concerns not the typical attorney-client relationship, but a business relationship between attorney Berman and Sally Gabe.[1] Berman was the attorney for and a shareholder in a corporation in which Gabe invested.
In Count 1, the referee found that Gabe invested in Master Craft N.V., which was a jewelry business venture in Aruba. On March 17, 1986, Gabe gave Berman a cashier's check for $40,000, payable to Berman's trust account, for investment in Master Craft. She also gave Berman a cashier's check for $10,000, also payable to his trust account, for investment in the corporation. Berman endorsed the $10,000 check back to Gabe as good faith to induce her to invest.
Berman disbursed $14,300 from the $40,000 deposited in his trust account to Marvin Moskowitz, who was organizing Master Craft, because Moskowitz needed money "to further the corporate goal." Berman disbursed $20,000 of the $40,000 deposited in his trust account into Aruba Bank N.V. in the name of Master Craft, then disbursed $19,000 to cash and/or Myron B. Berman.
The referee found that there were no receipts or expenses to prove that the funds were used to further Master Craft's business. He also found that Berman did not use the funds for the purpose for which they were intended and misrepresented to Gabe how her funds would be used. The referee recommended that Berman be found guilty of violating Disciplinary Rules 1-102(A)(4) and (6) of the Code of Professional Responsibility.[2]
In Count 2, the referee found that Berman was held in contempt for failing to comply with a court order in a suit Gabe brought against Berman and Moskowitz over her $40,000 investment in Master Craft. Berman was sentenced to detention in the Dade County jail and subsequently purged himself of the contempt order. The referee recommended that Berman be found guilty of violating Rule of Professional Conduct 4-8.4(d), which provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice.
In recommending a ninety-day suspension, the referee did not specify what he considered in aggravation or mitigation. He noted, however, that Berman had no disciplinary convictions or measures since he became a Bar member in 1963; Berman satisfied an $8000 judgment that Gabe obtained in her civil lawsuit; and Berman spent forty-nine nights in the Dade County jail on work release because of the contempt of court.
A referee's findings of fact carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. See Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla. 1986). Although Berman takes exception to certain *1051 findings,[3] we find support in the record for the referee's findings.
This Court's scope in reviewing recommended sanctions is somewhat broader than that for its review of findings of fact. This is because the Court ultimately has the responsibility to order an appropriate sanction. Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla. 1989).
Sanctions must serve three purposes: the judgment must be fair to society by protecting the public from unethical conduct without being unduly harsh; the judgment must be fair to the attorney in that it imposes sanctions on the attorney while encouraging rehabilitation; and the judgment must be severe enough to deter others from similar violations. Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970).
The referee, the Bar, and Berman all differ on what constitutes an appropriate sanction in this case. The referee recommended a ninety-day suspension, and Berman argues that a suspension of ten to thirty days is appropriate. Neither proposed sanction would require a showing of rehabilitation before Berman is reinstated. See R.Reg.Fla. Bar 3-5.1(e) (suspension of ninety days or less does not require proof of rehabilitation or passage of bar examination). The Bar urges a three-year suspension, which would require a showing of rehabilitation before reinstatement.
The Bar also maintains that Berman's misconduct warrants a three-year suspension because this Court has disbarred attorneys who have misused clients' funds. See, e.g., Florida Bar v. Prevatt, 609 So.2d 37 (Fla. 1992) (five-year disbarment for using client's funds over ten-year period); Florida Bar v. Nagel, 440 So.2d 1287 (Fla. 1983) (ten-year disbarment for conversion of clients' funds); Florida Bar v. Hamilton, 240 So.2d 151 (Fla. 1970) (disbarment for embezzling client's funds). The Bar does not seek disbarment because the relationship in the instant case was not that of attorney and client. We find, however, that a three-year suspension is an excessive sanction in this case.
Because Berman's misconduct involved misuse of funds  albeit not a client's  a suspension that requires a showing of rehabilitation is appropriate. Berman's proposal of a ten- to thirty-day suspension is not sufficient to be considered a sanction.
Instead, we find that a six-month suspension serves the purposes of attorney discipline. This sanction requires proof of rehabilitation, but is not overly punitive.
Berman is hereby suspended from the practice of law for six months. The suspension will be effective thirty days from the filing of this opinion so that Berman can close out his practice and protect the interests of existing clients. If Berman notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Berman shall accept no new business from the date this opinion is published until the suspension is completed. The cost of these proceedings are taxed against Berman and judgment is entered in the amount of $5286.52, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] This Court has held that conduct while not acting as an attorney can subject an attorney to disciplinary proceedings. See, e.g., Florida Bar v. Hooper, 507 So.2d 1078 (Fla. 1987) (attorney suspended for conduct in personal transaction); Florida Bar v. Bennett, 276 So.2d 481 (Fla. 1973) (attorney suspended for failure to pay taxes for business transaction in which he was trustee).
[2] These rules were in effect when the misconduct occurred in March 1986. Rule 1-102(A)(4) of the Code of Professional Responsibility provided that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Rule 1-102(A)(6) provided that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law.

This Court subsequently promulgated the Rules Regulating the Florida Bar, which integrated all rules pertaining to the Bar into a single document and, thus, did away with the Code of Professional Responsibility. See Florida Bar re Rules Regulating the Fla. Bar, 494 So.2d 977 (Fla. 1986).
[3] Berman takes exception to the referee's findings that Gabe received $10,000 as a good-faith inducement for investing in the corporation; that the disbursements were not legitimate expenditures to further the corporate purpose; that receipts were unsatisfactory; and that Berman made misrepresentations to Gabe.