702 So.2d 218 (1997)
THE FLORIDA BAR, Complainant,
v.
Timothy J. HMIELEWSKI, Respondent.
No. 88526.
Supreme Court of Florida.
November 26, 1997.
*219 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Bar Counsel and Adria E. Quintela, Kevin P. Tynan and Rose Ann DiGangi-Schneider, Co-Bar Counsel, Fort Lauderdale, for Complainant.
J. David Bogenschutz of Bogenschutz and Dutko, P.A., Fort Lauderdale, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by attorney Timothy J. Hmielewski. We have jurisdiction. Art. V, § 15, Fla. Const.
Hmielewski agreed to represent Scott Schubot in a Minnesota lawsuit against Mayo Clinic alleging claims of wrongful death and medical malpractice arising from the death of Schubot's father. Sometime between the commencement of his representation of Schubot and the filing of the lawsuit, Schubot confided in Hmielewski that he had purloined some of his father's medical records from the Mayo Clinic, and then showed the records to Hmielewski. Schubot told Hmielewski that he believed that the records belonged to him and his father since they had paid for the medical services involved. Schubot had become concerned that Mayo Clinic was trying to cover up what had really happened. He took the records after Mayo Clinic tried to persuade him that his father's injuries occurred because his father was suicidal.
Because the medical records had been taken, Mayo Clinic was unable to find or produce these critically important records when called upon by Hmielewski in pretrial discovery to produce the documents. In response to various interrogatories propounded upon Schubot by Mayo Clinic, which requested production of any of his father's medical records that he had in his possession, Hmielewski falsely stated that all records in Schubot's possession had already been provided to Mayo Clinic, even though Hmielewski knew that the records his client had taken had never been revealed or sent to the hospital. Hmielewski made a number of other false *220 representations to Mayo Clinic regarding the medical records and also misrepresented in a report to the trial court that one of the material factual issues in the case was why Mayo Clinic had failed to maintain critical patient records during the time frame when Schubot's father suffered his ultimately fatal injuries. Hmielewski also submitted an expert report on behalf of his client that opined that Mayo Clinic had tampered with the medical records, although he knew that the expert's opinion was based on the expert's belief that Mayo Clinic had failed to produce the medical records. In a settlement letter to Mayo Clinic demanding $400,000, Hmielewski deliberately misrepresented that Mayo Clinic had lost the medical records. As a result of Hmielewski's untrue and misleading representations, Mayo Clinic was put to substantial trouble and expense in attempting to locate and ascertain the medical information contained in the purloined medical records.
All of this came to light when Schubot's deposition was taken in the discovery phase of the Minnesota lawsuit. Hmielewski testified at the disciplinary hearing that he told Schubot that he would be asked about the records during his deposition and that he must truthfully answer the question. Hmielewski did not attend the deposition, but told his young associate who did attend in his place that Schubot must not be permitted to lie. At the associate's urging at the deposition, Schubot admitted that he had the records. Hmielewski was sanctioned by the Minnesota trial court for his fraudulent conduct and he and his client were fined $105,159. Hmielewski agreed to hold Schubot harmless for the payment of the fine. The matter was then referred to The Florida Bar.
The referee found that Hmielewski deliberately made the misrepresentations set forth above when all along he knew that the records were not lost but had been taken by his client. The referee recommended that Hmielewski be found guilty of violating the following Rules Regulating The Florida Bar: (1) rule 3-4.3, which proscribes conduct that is unlawful or contrary to honesty or justice; (2) rule 4-3.3(a)(1), which prohibits knowingly making false statements of material fact or law to a tribunal; (3) rule 4-3.3(a)(2), which prohibits failing to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; (4) rule 4-3.4(a), which prohibits both the unlawful obstruction of another party's access to evidence and the unlawful altering, destruction or concealment of a document or other material that the lawyer knows or reasonably should know is relevant to a pending or reasonably foreseeable proceeding, or counseling or assisting another person to do such an act; (5) rule 4-3.4(d), which prohibits the intentional failure to comply with legally proper discovery requests; (6) rule 4-4.1(a), which mandates that lawyers not make false statements of material fact or law to third persons while representing a client; (7) rule 4-4.4, which prohibits the use of methods of obtaining evidence that violate the rights of third persons; and (8) rule 4-8.4(c), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation.
The referee recommended that Hmielewski be suspended from the practice of law for one year followed by two years of probation, noting that the character and reputation testimony presented on Hmielewski's behalf was the primary mitigating factor that saved Hmielewski from disbarment.
"A referee's findings of fact carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record." Florida Bar v. Berman, 659 So.2d 1049, 1050 (Fla.1995). We find support in the record for the referee's factual findings. These findings establish that Hmielewski improperly allowed what he perceived as his duty to his client to overshadow his duty to the justice system when he made deliberate misrepresentations of material fact to the Mayo Clinic and the Minnesota trial court. Hmielewski's violations made a mockery of the justice system and flew in the face of Hmielewski's ethical responsibilities as a member of The Florida Bar.
However, we reject the referee's disciplinary recommendation that Hmielewski be given only a one-year suspension. This Court has broader discretion when reviewing *221 a referee's recommended disciplinary measures because the responsibility to order an appropriate sanction ultimately rests with this Court. In recommending only a one-year suspension, the referee appeared to be influenced by his belief that Hmielewski's actions were not the result of selfish motives. Thus, the referee's report states:
B. Absence of selfish motive. As strange as it may seem in light of the actions of the respondent, this referee is convinced that the respondent did not act out of selfishness. There was no motive of personal gain behind the respondent's actions. If anything, the respondent was overzealous in his efforts to promote his client's interests. The respondent appeared to adopt his client's belief that the Mayo Clinic would falsify or fabricate medical records regarding his client's father's demise. He anticipated that at that moment he would be able to produce the actual medical records thereby catching the hospital in its lie. Instead, the respondent got caught up in his own lie and allowed it to perpetuate in violation of his duty to the Court and to opposing counsel.
If it were not for this finding, the extremely strong character evidence, and Hmielewski's relatively unblemished record (one admonishment for minor misconduct in twenty-one years of practice), this Court would have no hesitation in imposing disbarment. Under the circumstances, we have determined that Hmielewski's misconduct warrants imposition of a three-year suspension. As a condition of reinstatement, Hmielewski shall pay to Mayo Clinic the sum of $26,189, which was determined to be the additional cost of defense caused by Hmielewski's actions.
Hmielewski is hereby suspended from the practice of law for a period of three years. The suspension will be effective thirty days from the filing of this opinion so that Hmielewski can close out his practice and protect the interests of existing clients. If Hmielewski notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Hmielewski shall accept no new business from the date this opinion is filed until the suspension is completed.
Hmielewski is ordered to pay costs to The Florida Bar in the amount of $2,164.04, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.