# Supreme Court of Florida

_____

No. SC11-1029
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**PETER M. MACNAMARA,**
Respondent.

[December 19, 2013]
**<u>CORRECTED OPINION</u>**

PER CURIAM.

The Florida Bar seeks review of the referee's report recommending that

Peter M. MacNamara be found guilty of certain acts of professional misconduct

and not others and recommending that MacNamara be placed on disciplinary

probation for two years with specified conditions.[1]  We approve the referee's

findings of fact and recommendations of guilt.  We disapprove the referee's

recommended sanction that did not include a period of suspension and imposed

---

1.  We have jurisdiction.  <u>See</u> art. V, § 15, Fla. Const.

only probation with conditions. Instead, we impose a ninety-day suspension in addition to the two-year probationary period with specified conditions.

This misconduct, which occurred in 2005 and 2006, arose out of the representation of a client in a probate matter involving the filing of federal estate taxes. The two issues the referee considered were whether Respondent actually filed an estate tax return and whether Respondent attempted to cover up his alleged failure to file an estate tax return. The Bar did not present clear and convincing evidence that Respondent failed to file the estate tax return or that there was a dishonest motive behind Respondent's failure to timely file the estate tax return. Nevertheless, Respondent failed to be forthright with the Bar about the circumstances of the filing.

This misconduct represents a single isolated incident in Respondent's thirty-seven-year history as a Florida lawyer. Although the facts could support a rehabilitative suspension, considering all the aggravating and mitigating circumstances, as well as the recommended sanction of the referee, we conclude that a ninety-day suspension is the appropriate discipline.

## FACTS

The Florida Bar filed a complaint alleging that Respondent, Peter M. MacNamara, had engaged in ethical misconduct and violated Rules Regulating the Florida Bar 4-1.4 (communication); 4-8.1 (maintaining the integrity of the

profession); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). A referee was appointed to hold hearings and provide a report to the Court. In the report, the referee made the following findings of fact and recommendations.

In 2004, Ms. Earl retained Respondent to represent the estate of her deceased mother (hereinafter "Mother"). Among his various duties, Respondent was to prepare an estate tax return to file with the IRS. He filed a request for an extension to file the estate tax return. The request was granted, giving Respondent until March 2, 2005, to file the return. However, on October 10, 2005, and again on December 5, 2005, the IRS sent letters to Respondent (the attorney of record), stating that the estate tax return had not been filed and was overdue. On December 16, 2005, Respondent sent the IRS a cover letter and an unsigned estate tax return, dated March 2, 2005. In the cover letter he stated, "[p]ursuant to your request, attached herewith please find a duplicate copy of the IRS Form 706, Federal Estate Tax Return for the Estate of [Mother]." (Emphasis added.) The IRS sent no further letters to Respondent stating that the estate tax return had not been filed and was overdue. Also, the IRS did not request a signed copy of the estate tax return that Respondent submitted on December 16, 2005.

Many months later, the IRS issued a $65,643.79 estate tax refund check to the estate, through Respondent, based upon the IRS zero estate tax determination

- 3 -

as reflected in the 2005 unsigned estate tax return prepared and submitted by Respondent. The referee stated, "[d]espite the issuance of the refund, IRS records (admitted into evidence) do not indicate that an estate tax return was filed by Respondent on behalf of the estate." The referee noted that the Bar filed a Freedom of Information Act (FOIA) request with the IRS seeking copies of all IRS files concerning the estate of Mother. The IRS FOIA response did not include copies of Respondent's cover letter or the unsigned estate tax return (which Respondent had sent to the IRS on December 16, 2005). The referee reported, "[n]otably, approximately twenty (20) of fifty-three (53) known documents were missing from the IRS' FOIA file. No witnesses from the IRS were called by either party to explain that discrepancy."

Next, on or about October 27, 2006, Respondent and Ms. Earl received an administrative notice from the probate court, stating that unless a response was filed in the related probate matter, the probate court was going to dismiss the case due to inactivity. On October 31, 2006, Respondent filed a Petition for Extension of Time to Close the Estate Administration in the probate court, stating, "[t]his estate has filed a federal estate tax return which is under review and/or audit. That audit and/or review has not been concluded and the federal estate tax closing letter has not been issued."

After receiving the notice from the probate court, Ms. Earl contacted an accountant for advice. The accountant recommended a tax attorney, Mr. Gordon, who Ms. Earl subsequently hired. On November 7, 2006, Gordon sent his first request to Respondent seeking the files related to Mother's estate and Ms. Earl. Eventually, after numerous requests, Respondent sent the files to Gordon on January 9, 2007.

In May 2007, Gordon filed a new tax return with the IRS on behalf of the estate, reflecting that the estate actually owed federal taxes. Thereafter, in October 2007, Respondent provided Gordon with the $65,643.79 IRS refund check on behalf of Mother's estate. Gordon returned the check to the IRS. Based on the estate tax return Gordon prepared, the estate paid the IRS several thousands of dollars in penalties and interest.

Due to these events, Ms. Earl filed a complaint with The Florida Bar regarding Respondent. Before the referee, this disciplinary case presented two issues: (1) whether Respondent actually filed an estate tax return, and (2) whether Respondent attempted to cover up his alleged failure to file an estate tax return.

During the course of the Bar's investigation, Respondent repeatedly provided written responses in which he claimed that he sent the IRS "an original, no tax, estate tax return" before he received the October and December 2005 notices from the IRS and before he sent the cover letter and unsigned estate tax

return on December 16, 2005. In one response, Respondent indicated that the tax return he mailed in December 2005 was the third copy of the return he had sent to the IRS. In another written response to the Bar, he referred to the December 16, 2005, unsigned tax return as a "duplicate" copy of the estate tax return. Similarly, in his December 16, 2005, cover letter to the IRS, he identified the unsigned estate tax return as a "duplicate" estate tax return.

Before the referee, however, Respondent's testimony directly contradicted his prior written responses. Respondent admitted that the unsigned copy of the estate tax return he attached to the December 16, 2005, cover letter was in fact the first tax return that he had sent to the IRS. Based upon the evidence, the referee found that Respondent sent the unsigned tax return to the IRS in December 2005. In addition, the referee found that Respondent's written responses to the Bar were knowingly false statements, and that he employed language to deliberately mislead the Bar regarding the filing of the unsigned estate tax return. Further, Respondent's reference to the tax return as a "duplicate estate tax return" in his letter to the IRS was dishonest and misleading and was designed to convey to the IRS that the estate tax return had been previously sent to the IRS. Also, Respondent had failed to correct the misunderstandings created by his written statements to the IRS and the Bar. Based on these facts, the referee recommended that the Court find Respondent guilty of violating Bar rules 4-8.1 (maintaining the

- 6 -

integrity of the profession) and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

In addition, as discussed above, Respondent filed a Petition for Extension of Time to Close the Estate Administration in the probate court, which stated incorrectly that a federal estate tax return had been "filed" as of October 31, 2006. In these disciplinary proceedings, Respondent repeatedly admitted that he never obtained Ms. Earl's signature on the estate tax return that he prepared. Also, he acknowledged that an unsigned tax return is not a valid return. Thus, Respondent knew that the unsigned tax return he submitted to the IRS on December 16, 2005, was not properly "filed" and, in turn, was not a valid return for purposes of the probate proceedings. Respondent knew his statement to the probate court was a misrepresentation. Based on the misleading pleading Respondent filed in the probate court, the referee recommended that the Court find Respondent guilty of a second violation of Bar rule 4-8.4(c). The referee directed Respondent to correct the record in the probate proceeding, as part of the recommendations in this disciplinary case.

Next, Ms. Earl testified that she was unable to adequately communicate with Respondent. Specifically, she stated that Respondent refused to respond to her or return her calls. Also, he refused to provide documentation upon request. Ms. Earl had to make several requests for the estate tax return before Respondent finally

sent her a copy via fax in April 2006. Ultimately, Ms. Earl terminated Respondent's representation and hired a different attorney, Gordon. Thereafter, Respondent took approximately two months before he complied with Gordon's requests to provide the case files. Based on these facts, the referee recommended that the Court find Respondent guilty of violating Bar rule 4-1.4 (communication).

With respect to the remaining allegations in the Bar's complaint, the referee found that those allegations were not proven by clear and convincing evidence. In particular, the referee stated that he could not find by clear and convincing evidence that Respondent fabricated the December 16, 2005, cover letter to the IRS in an attempt to cover up his alleged failure to file the estate tax return. The competing testimonies from the expert witnesses regarding computer data were inconclusive.

After considering the evidence, the referee recommended that the Court find Respondent guilty of violating Bar rules 4-1.4 (communication) and 4-8.1 (maintaining the integrity of the profession). Further, the referee recommended that Respondent be found guilty of two violations of 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

As a disciplinary sanction, the referee recommended probation for a period of two years. The recommended conditions of probation include: (A) Respondent shall attend and successfully complete a Professional Responsibility course within

- 8 -

twelve months of the Court's opinion; (B) Respondent shall complete eight hours of Continuing Legal Education courses approved by The Florida Bar in the area of Ethics, within twelve months of this Court's opinion, and; (C) Respondent shall correct the record as to his October 31, 2006, request for extension in the probate court case regarding the estate of Mother, within sixty days of this Court's opinion. The referee awarded costs to the Bar of $6,790.26.

Respondent was admitted to The Florida Bar in 1976. He does not have any disciplinary history. However, the referee found three aggravating factors: (1) submission of false evidence, false statements, or other deceptive practices during the disciplinary process (Standard 9.22(f)); (2) refusal to acknowledge wrongful nature of conduct (Standard 9.22(g)), and; (3) substantial experience in the practice of law (Standard 9.22(i)). With regard to mitigation, the referee found three factors: (1) absence of a prior disciplinary record (Standard 9.32(a)); (2) absence of dishonest or selfish motive (Standard 9.32(b)); and (3) character or reputation—Respondent has a good reputation in the legal community and has made substantial contributions to his community and the legal profession (Standard 9.32(g)).

## ANALYSIS

The Bar challenges a portion of the referee's findings of fact. This Court's review of a referee's factual findings is limited; if a referee's findings are supported by competent, substantial evidence in the record, this Court will not

reweigh the evidence and substitute its judgment for that of the referee. See Fla. Bar v. Frederick, 756 So. 2d 79, 86 (Fla. 2000); see also Fla. Bar v. Jordan, 705 So. 2d 1387, 1390 (Fla. 1998). Thus, the burden is on the Bar to demonstrate that the referee's findings of fact are unsupported.

In arguing that certain findings by the referee are not supported, the Bar points to its own evidence that contradicts the referee's findings. A party cannot meet its burden, however, by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings. See Fla. Bar v. Committe, 916 So. 2d 741, 746 (Fla. 2005); Fla. Bar v. Nowacki, 697 So. 2d 828, 832 (Fla. 1997).

In addition, the Bar relies upon evidence that is inconclusive, such as the conflicting testimonies of the computer data experts regarding the metadata as it concerns a possible fabrication of the estate tax return. The referee considered the competing testimonies of the two computer experts and found that the Bar had failed to prove that Respondent fabricated the cover letter. When the Bar's computer expert testified, he stated that the file at issue on Respondent's computer was created on January 8, 2007, which suggested that Respondent fabricated and backdated the cover letter as being written on December 16, 2005. However, the Bar's expert then stated that the computer's data also showed that the same file had been printed on June 15, 2004, which was approximately two and one-half years

- 10 -

before the file was supposedly created. Further, the two experts (one presented by the Bar and the other presented by Respondent) testified that metadata can be misleading because if someone moves a file or copies a file to another folder, or in some situations when someone re-saves the file, the creation date will change.

Because the evidence provided by both computer experts was inconclusive regarding a possible fabrication, the referee did not make any findings based on their testimonies. The referee's responsibility is to weigh all of the evidence and decide which factors have been proven by clear and convincing evidence. See Fla. Bar v. Herman, 8 So. 3d 1100, 1106 (Fla. 2009). Because the evidence was inconclusive, the referee's finding that the Bar failed to prove Respondent fabricated the cover letter subsequent to December 16, 2005, should not be disturbed. Accordingly, the Bar has failed to carry its burden on review. We approve the referee's findings of fact.

**DISCIPLINARY SANCTION**

The Florida Bar argues that the referee's recommendation of probation for two years is unsupported and that disbarment is the appropriate sanction. Of course, its position that disbarment is appropriate is predicated on the filings before the IRS being fabricated.

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because,

ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989). However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

The referee recommended that Respondent be found guilty of violating Bar rules 4-1.4 and 4-8.1. Significantly, the referee also recommended that the Court find Respondent guilty of two violations of rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

The first recommendation that Respondent be found guilty of violating rule 4-8.4(c) is based upon Respondent providing several written responses to the Bar stating that he filed the tax return with the IRS in a timely manner in March 2005. Respondent eventually admitted while testifying before the referee that he did not send a tax return to the IRS until December 2005. When Respondent provided those earlier written responses to the Bar, he made knowingly false statements to the Bar and employed language to deliberately mislead the Bar regarding the filing of the unsigned estate tax return. In addition, in his December 2005 cover letter to the IRS, Respondent deliberately referred to that tax return as a "duplicate estate tax return," which was dishonest and misleading and designed to convey to the IRS

that the estate tax return had been previously sent to the IRS. These are serious acts of misconduct.

The referee's second recommendation that Respondent be found guilty of violating rule 4-8.4(c) is based upon Respondent filing the Petition for Extension of Time to Close the Estate Administration in the probate court, in which he intentionally misled the probate court regarding the tax return. He deliberately and incorrectly told that court that a federal estate tax return had been "filed." Respondent knew that "filed" is a term of art in tax proceedings. He knew Ms. Earl had not signed the return and, therefore, the unsigned tax return he submitted to the IRS on December 16, 2005, was not properly "filed" and was not a valid tax return for purposes of the probate proceedings. This misconduct was of concern to the referee, who stated that courts need to be able to rely upon the statements of the lawyers practicing before them.

Although the referee recommended that Respondent be found guilty of four rule violations, the referee recommended a lenient sanction of probation for two years. We conclude that the referee's recommended sanction of probation without a suspension is not supported by the Florida Standards for Imposing Lawyer Sanctions or existing case law. Based upon the Standards and Respondent's repeated and intentional misrepresentations, a suspension is appropriate. Under Standard 7.0, "Violations of Other Duties Owed as a Professional," Standard 7.2

provides that suspension is "appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Respondent caused potential injury to the public, his client, and the legal system by submitting his misleading petition to the probate court, misleading the IRS with his December 2005 cover letter, and providing false statements to the Bar claiming that he filed the tax return in March 2005. Although the referee stated that Respondent's actions did not prejudice Ms. Earl, this statement overlooks the fact that Ms. Earl had to hire new counsel to resolve the difficulties that Respondent created. Further, Respondent was not forthcoming with Ms. Earl—he did not inform her that he failed to properly "file" the tax return and that he did not submit it to the IRS in a timely manner. Respondent also took approximately two months to provide the case file to Ms. Earl's new attorney, Gordon, thereby causing further delays for Ms. Earl. Thus, the Court disapproves the referee's conclusion that Ms. Earl was not caused any harm or prejudice by Respondent's misconduct.

In Florida Bar v. Head, 84 So. 3d 292, 293-95 (Fla. 2012), the Court found a ninety-one-day suspension appropriate for the respondent who, along with other misdeeds, misrepresented facts in an Affidavit of Compliance that he filed with a court. In that case, the respondent represented a commercial landlord in an eviction proceeding against a tenant whose business records were still at the rental

property.  In the affidavit, the respondent asserted that he made the business records available to the tenant, which was untrue.  Further, the referee found that the respondent testified untruthfully regarding that matter during the disciplinary hearing.  Thus, the respondent engaged in dishonest conduct before the civil court and the referee.

Similarly, in this case, Respondent misrepresented to the probate court that he had "filed" a tax return with the IRS that was still being considered, when he knew he had not sent the IRS a signed "filed" tax return.  In addition, he sent the deliberately misleading cover letter to the IRS and failed to honestly inform his client about the status of the tax return.  Also, Respondent made numerous misrepresentations to the Bar by claiming that he filed the tax return in March 2005.  Respondent has engaged in numerous acts of dishonesty.

Unlike the respondent in Head, whose conduct merited a ninety-one-day suspension, Respondent admitted before the referee that he did not send the unsigned tax return to the IRS until December 16, 2005.  Thus, he admitted that his prior statements were misrepresentations.[2]  Further, unlike the attorney in Head, Respondent, who has been a member of The Florida Bar since 1976, does not have

---

2. Respondent's misconduct is serious, but it does not warrant disbarment. The Court has stated that disbarment "should be reserved for the most egregious misconduct." Fla. Bar v. Summers, 728 So. 2d 739, 742 (Fla. 1999); see also Fla. Bar v. Kassier, 711 So. 2d 515, 517 (Fla. 1998) (stating that the sanction of disbarment is to be imposed only in those cases where rehabilitation is highly improbable).

a prior disciplinary history. In addition, Respondent has not been the subject of a disciplinary case since the events at issue in this proceeding. The events occurred in 2005 and 2006 but the Bar did not file its complaint until 2011. For all these reasons, and based upon the Standards and case law, we find that the appropriate sanction for Respondent is a ninety-day suspension.

## CONCLUSION

Accordingly, we approve the referee's findings of fact, recommendations of guilt, and award of costs. We disapprove the referee's recommended sanction of two years probation. Peter M. MacNamara is hereby suspended from the practice of law for ninety days and then will be on probation for two years following the suspension. The suspension will be effective thirty days from the date of this opinion so that Peter M. MacNamara can close out his practice and protect the interests of his existing clients. If Respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Peter M. MacNamara shall fully comply with Rule Regulating the Florida Bar 3-5.1(h), "Notice to Clients." Respondent shall accept no new business from the date of this opinion until the suspension is completed.

Further, we approve the referee's recommended special conditions of probation, which include: (A) Respondent shall attend and successfully complete a

Professional Responsibility course within twelve months of this Court's opinion; (B) Respondent shall complete eight hours of Continuing Legal Education courses approved by The Florida Bar in the area of Ethics, within twelve months of this Court's opinion; and (C) Respondent shall correct the record as to his October 31, 2006, request for extension in the probate court case regarding the estate of Mother, within sixty days of this Court's opinion.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Peter M. MacNamara in the amount of $6,790.26, for which sum let execution issue.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.


CANADY, J., concurring in part and dissenting in part.

I concur with the majority's decision to approve the referee's findings of fact and recommendations of guilt. The record overwhelmingly supports the conclusion that Peter M. MacNamara violated Rules Regulating the Florida Bar 4-1.4 (communication); 4-8.1 (maintaining the integrity of the profession); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or

misrepresentation). In addition, I concur with the majority's rejection of the finding that MacNamara's misconduct did not cause harm or prejudice to his client. But I dissent from the majority's decision to impose a non-rehabilitative suspension followed by probation. I would instead impose a one-year suspension.

MacNamara's misconduct was not "a single isolated incident in Respondent's thirty-seven year history as a Florida lawyer." Majority op. at 2. MacNamara engaged in a lengthy campaign of misrepresentations in an effort to cover up what likely began—but did not end—as an act of negligence in his representation of an estate. "Dishonesty and a lack of candor cannot be tolerated by a profession that relies on the truthfulness of its members." Florida Bar v. Korones, 752 So. 2d 586, 591 (Fla. 2000) (quoting Florida Bar v. Graham, 605 So. 2d 53, 56 (Fla. 1992)). Because truthfulness is so essential to the practice of law, MacNamara's pattern of misrepresentations warrants at least a one-year suspension and the special conditions recommended by the referee and approved by the majority.

After failing to timely file a federal estate tax return on behalf of his client, MacNamara did not admit his error and take corrective measures. Instead, in December 2005, MacNamara sent an unsigned federal estate tax return to the Internal Revenue Service (IRS) and claimed that the unsigned return was merely a "duplicate," suggesting that a return had been properly filed several months earlier.

As the referee concluded, MacNamara's correspondence with the IRS was "dishonest and misleading." In October 2006, MacNamara expanded the scope of his cover-up by deliberately misrepresenting a material fact to a state tribunal. MacNamara filed a petition for an extension of time in the probate court, in which he falsely stated that a federal estate tax return had been filed and was pending review by the IRS. Finally, "on multiple occasions" in 2011, MacNamara informed the Bar—in writing—that he "sent to the IRS an original, no tax, estate tax return prior to . . . sending the cover letter and unsigned estate tax return on December 16, 2005." Again, the referee concluded that MacNamara's assertions "were knowingly false statements."

The Florida Standards for Imposing Lawyer Sanctions indicate that suspension is the appropriate discipline for MacNamara's repeated misrepresentations. As the majority acknowledges, standard 7.2 provides that a suspension is appropriate in a case such as MacNamara's because he "knowingly engage[d] in conduct that [was] a violation of a duty owed as a professional and cause[d] injury or potential injury to a client, the public, or the legal system." Additionally, because MacNamara knowingly made a false statement to the probate court in order to secure an extension, standard 6.11(a) applies. That standard provides that disbarment may be warranted where an attorney "with the intent to deceive the court, knowingly makes a false statement or submits a false

document." These standards and our case law make clear that "[a]n officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded from that process." Florida Bar v. Rightmyer, 616 So. 2d 953, 955 (Fla. 1993).

But while the majority correctly concludes that a suspension is warranted, the majority errs in relying on Florida Bar v. Head, 84 So. 3d 292 (Fla. 2012), when determining that a non-rehabilitative suspension is appropriate. In Head, this Court concluded that a ninety-one-day suspension was appropriate where Head— who represented the landlord in a contentious landlord-tenant action—filed in the trial court an affidavit falsely claiming that he had made certain business records available to the defaulting tenant's comptroller, asserted the same misrepresentation during the disciplinary proceeding, and included a fictitious case number in a letter to the opposing party that was designed to give the impression that a cause of action had been filed. Id. at 294-95.

Contrary to the majority's characterization, Head's misconduct was not more serious than MacNamara's lengthy cover-up. In fact, Head's dishonesty was more limited in scope—he did not attempt to deceive the federal government in addition to a state court and the Bar—and Head's misconduct did not cause actual harm. See Fla. Standards for Imposing Lawyer Sanctions 12.1(b) (listing "[a]ctual harm to clients or third parties" as an aggravating factor). In Head, the referee

expressly found that because there was no showing that "the letter was relied upon by anyone or caused damage or harm," Head's attempt to gain a tactical advantage by listing the fictitious case number "was minor and of no consequence in the case." Id. at 296. Further, this Court concluded that Head "caused potential injury to the public and the legal system by submitting his false affidavit to a civil court, providing his untruthful testimony before the referee, and by creating and posting the letter stating a false case number," id. at 303, but did not recite any evidence of actual injury.

MacNamara's misconduct, in contrast, caused actual harm to his client. Due to MacNamara's failure to communicate with his client, the client was forced to incur the expense of hiring new counsel to complete the administration of her mother's estate. Once new counsel was hired, MacNamara failed to turn over the client's file in a timely manner—thereby causing further delay—despite knowing that the state and federal estate tax returns were overdue. Ultimately, due to the delay in filing the estate tax returns, the client paid penalties and interest to the IRS and interest to the State of Florida.

MacNamara's multiple acts of dishonesty and the harm they caused are analogous to the misconduct at issue in Florida Bar v. Rotstein, 835 So. 2d 241 (Fla. 2002). In count one of Rotstein's case, the referee determined that after negligently failing to file a personal injury action, Rotstein did not advise his client

- 21 -

when the statute of limitations on her claim had run. Instead, when he realized his error, Rotstein "fraudulently created a letter that he backdated to July 8, 1998, purportedly advising [the client] that he was withdrawing as her representative and that the statute of limitations would run on December 25, 1998." Id. at 242. Although Rotstein eventually admitted his wrongdoing and offered to compensate his client for her injuries, Rotstein initially insisted to the Bar—in writing on three separate occasions—that the withdrawal letter was accurate and true. While there were additional charges stemming from other allegations against Rotstein, this Court concluded that the referee's recommended discipline of a one-year suspension was merited "[o]n the basis of the violations in count I alone." Id. at 246. This Court determined that Rotstein's "basic, fundamental dishonesty" was "intentional and egregious misconduct" that "demonstrated an attitude that is wholly inconsistent with professional standards." Id. at 246-47.

Florida Bar v. Hmielewski, 702 So. 2d 218 (Fla. 1997), is also instructive. In that case, this Court determined that a three-year suspension was warranted where Hmielewski repeatedly misrepresented the location of relevant medical records. Despite knowing that his client had taken the records from the Mayo Clinic and not disclosed them during discovery, Hmielewski falsely stated that the client had produced all of the records in his possession and disingenuously asserted to the trial court that the Mayo Clinic had lost the records. As a result of

Hmielewski's dishonesty, "Mayo Clinic was put to substantial trouble and expense in attempting to locate and ascertain the medical information contained in the purloined medical records." Id. at 220. This Court determined that "Hmielewski's violations made a mockery of the justice system and flew in the face of Hmielewski's ethical responsibilities as a member of The Florida Bar," id., but declined to disbar Hmielewski due to the character evidence presented on his behalf, his lack of selfish motive, and his lack of prior non-minor misconduct. This Court also noted that before the case was referred to the Bar, the trial court imposed sanctions and Hmielewski made some effort to allay the consequences of his misconduct by agreeing to hold his client harmless for the payment of the fine.

Based on these precedents, MacNamara's misconduct warrants at least a one-year suspension. Just as Rotstein backdated a letter purporting to withdraw from representation, MacNamara intentionally used the word "duplicate" in an attempt to deceive the IRS, his client, and the probate court. Both Rotstein and MacNamara persisted in their dishonesty by submitting false documents to the Bar. And like Hmielewski, MacNamara was indifferent to the harm his dishonesty caused. MacNamara knowingly allowed the IRS and new counsel to search for a document that did not exist. The IRS, MacNamara's client, her new counsel, the probate court, and the Bar were all put to "trouble and expense" by MacNamara's false statements and lack of cooperation. Id. at 220. MacNamara's case materially

differs from these precedents only in that MacNamara did not concede that he was guilty of misconduct before the referee or make any effort to compensate the wronged client. As the referee stated during the hearing on the recommendation as to discipline, MacNamara "still doesn't seem to . . . quite get it."

"The public expects and deserves fairness and candor from attorneys . . . . If we are to preserve the credibility of our self-regulated profession, we must address breaches of that trust in a manner that is commensurate with the severity of the breach." Florida Bar v. Cox, 794 So. 2d 1278, 1286 (Fla. 2001). In this case, the majority has failed to impose a suspension that is commensurate with MacNamara's calculated and persistent efforts to cover up his professional negligence in blatant disregard for his professional obligations. Accordingly, I dissent from the imposition of a non-rehabilitative suspension.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director and Kenneth Lawrence Marvin, Staff Counsel, The Florida Bar, Tallahassee, Florida, and Jennifer R. Falcone Moore, Bar Counsel, The Florida Bar, Miami, Florida,

    for Complainant

Robert C. Josefsberg, Miami, Florida,

    for Respondent