# Supreme Court of Florida

_____

No. SC20-286
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**KARL O. KOEPKE,**
Respondent.

October 28, 2021

COURIEL, J.

We have for review a referee's report recommending that Respondent, Karl O. Koepke, be found guilty of professional misconduct and suspended from the practice of law for one year. We have jurisdiction. *See* art. V, § 15, Fla. Const.

Notwithstanding Mr. Koepke's long membership in the Florida Bar and lack of prior disciplinary history, we conclude that his actions in this matter demonstrate so purposeful and considered a violation of his oath of attorney as to require disbarment. We

therefore disapprove of the referee's recommended sanction and order instead that Mr. Koepke be disbarred.

## I

Mr. Koepke was admitted to the Florida Bar in 1965. His practice has focused on civil trial law, primarily representing clients in wrongful death actions.

Mr. Koepke divorced in 1990. His former wife received an alimony award. In 2014, Mr. Koepke fell substantially behind in alimony payments, and his former wife filed a motion for contempt, seeking $88,000 in arrearages. Mr. Koepke was represented in the proceeding, but he also appeared as co-counsel.

While his divorce litigation was pending, Mr. Koepke represented a plaintiff in a personal injury matter. On September 9, 2016, Mr. Koepke signed a settlement agreement at mediation to resolve that case for his client, subject to court approval. He had a contingency fee agreement that entitled him to approximately $400,000 of the settlement proceeds.

Shortly thereafter, Mr. Koepke's former wife's attorney, Gregory Wilson, discovered that the personal injury case Mr. Koepke was handling might have settled. In the proceedings

regarding Mr. Koepke's delinquent alimony, Wilson requested documents regarding any such settlement. Mr. Koepke refused to produce them, so Wilson filed a motion to compel. On June 29, 2017, the court granted that motion and required Mr. Koepke to produce "(1) a redacted copy of his retainer agreement setting forth his fee agreement/compensation arrangement, (2) all settlement correspondence and written communications with the defendants, all documents, that are not atty-client privileged, related to any settlement payments by the insurance company, and (3) any settlement agreements." Report of Referee at 4.

On July 10, 2017, Mr. Koepke complied, providing a redacted copy of the fee agreement in the personal injury case. But, critically, Mr. Koepke did not produce any documents related to the September 9, 2016, settlement agreement. Ten days later, Mr. Koepke filed another document with the court, stating, "(1) a redacted copy of the contract was previously provided on July 10, 2017; as to category (2) there being no settlement, no documents exist or could be found that are responsive; and, as to category (3) there being no settlement, no documents exist or could be found that are responsive." *Id.*

The court held a trial on the former wife's motion for contempt and Mr. Koepke's petition for mediation on August 24 and 25, 2017. Before trial, the former wife's counsel served subpoenas duces tecum on several parties to the personal injury matter and on Mr. Koepke, requesting that he bring his client file to court on the day of the trial. A party in the personal injury case moved to quash the subpoenas and Mr. Koepke joined the motion. The court ordered Mr. Koepke to produce the non-privileged contents of his file. On the second day of trial, Mr. Koepke testified. During cross examination, Mr. Koepke revealed that he had in fact not brought the client file with him to court, notwithstanding the court's order compelling him to do so. The court renewed its order and took a one-hour recess allowing Mr. Koepke to retrieve the file. Mr. Koepke did, and the trial court reviewed it in camera. Not surprisingly, the court found the September 9, 2016, settlement agreement and ordered its production to the former wife. Because the newly discovered evidence justified a continuance beyond the time allotted for trial, and because the judge was slated soon to rotate out of the division, the court declared a mistrial. On September 27, 2017, the former wife's counsel filed a motion for an

order to show cause why Mr. Koepke should not be held in contempt.

Undeterred, Mr. Koepke made a series of still more consequential decisions. As the trial court would later find, on December 8, 2017, Mr. Koepke settled a trust for the benefit of himself and his grandchildren. From the $1,000,000 settlement proceeds due to his client in the personal injury case, $400,000 was wired to the trust set up by Mr. Koepke. The following week, on December 14, 2017, through counsel, Mr. Koepke offered his former wife a payment of $100,000 in exchange for her dismissal of all pending motions, including the motion for contempt, in their alimony proceedings and waiver of all past, present, and future claims to alimony or attorneys' fees. She rejected his offer.

The matter proceeded to trial again, and, on June 28, 2018, the successor judge found Mr. Koepke guilty beyond a reasonable doubt of indirect criminal contempt and sentenced him to 30 days in jail. In the order finding Mr. Koepke guilty, the trial court found that he was untruthful and intentionally misleading in his discovery responses to the former wife to delay and obfuscate the former

wife's discovery of the settlement agreement in the personal injury case.

The order also laid out findings from which the trial court inferred Mr. Koepke's intent, including: he was not paying alimony in the years that the alimony issues were pending before the court; the delays in alimony payment favored him; his explanation for not disclosing the settlement agreement was not credible when the discovery requests, the trial court's order, and the subpoenas for trial were very clear, and the title of the document was "Settlement Agreement at Mediation"; and during the delay in disclosing the personal injury case settlement, Mr. Koepke "researched, planned, and executed a diversion of the attorneys' fees to an irrevocable trust" that protected these earnings from the former wife. Report of Referee at 8. The court referred Mr. Koepke to the Bar for disciplinary review.

On appeal of the order finding Mr. Koepke in contempt, the Fifth District Court of Appeal per curiam affirmed. *Koepke v. Koepke*, 275 So. 3d 1278 (Fla. 5th DCA 2019). Mr. Koepke ultimately served twenty days in jail for criminal contempt.

On February 25, 2020, acting on the trial court's referral, the Bar filed a complaint alleging that Mr. Koepke violated Bar Rules 3-4.3 (Misconduct and Minor Misconduct), 4-3.4 (Fairness to Opposing Party and Counsel), 4-8.4(b) ("A lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."), 4-8.4(c) ("A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ."), 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice . . . ."), and the Oath of Admission. The complaint was referred to a referee, who conducted a hearing on the matter and filed her report on August 24, 2020.

The referee recommended that Mr. Koepke be found guilty of violating all the Bar Rules alleged in the complaint, as well as the Oath of Admission. The referee determined that Mr. Koepke's failure to disclose the settlement agreement was deceitful. However, the referee found that Mr. Koepke's failure to bring the client file pursuant to the subpoena duces tecum was not established as deceitful by clear and convincing evidence because Mr. Koepke had

filed a notice of joinder in the motion to quash the subpoenas duces tecum.

The referee recommended that Mr. Koepke be disciplined by a one-year suspension and be ordered to pay the Bar's costs of $2,606.73. In making her recommendation as to the appropriate sanction, the referee found three aggravating factors: (1) dishonest or selfish motive; (2) refusal to acknowledge the wrongful nature of the conduct; and (3) substantial experience in the practice of law. The referee found the following four mitigating factors: (1) absence of a prior disciplinary record; (2) full and free disclosure to the Bar or cooperative attitude toward the proceedings; (3) character or reputation; and (4) imposition of other penalties or sanctions. The referee considered the following sections of the Florida Standards for Imposing Lawyer Sanctions: 5.1 (Failure to Maintain Personal Integrity); 6.1 (False Statements, Fraud, and Misrepresentation); 6.2 (Abuse of the Legal Process); and 7.1 (Deceptive Conduct or Statements and Unreasonable or Improper Fees).

On October 20, 2020, the Bar filed a notice of intent to seek review of the referee's report, particularly the recommended discipline, and requested that we disbar Mr. Koepke. After receiving

an extension of time, Mr. Koepke filed his initial answer brief four days late; the brief was at first accepted then stricken for noncompliance. He was directed to file an amended answer brief on or before January 14, 2021, but he did not file it until sixty-one days later, after the case had already been set for conference.

## II

The parties do not dispute the referee's factual findings or recommendations as to guilt. Therefore, we focus on the referee's recommended sanction for Mr. Koepke.

In reviewing a referee's recommended discipline, our scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. *See Fla. Bar v. Picon*, 205 So. 3d 759, 765 (Fla. 2016) (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989)). At the same time, we will generally not second-guess the referee's recommended discipline so long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions (Standards). *See Fla. Bar v. Alters*, 260 So. 3d 72, 83 (Fla. 2018); *Fla. Bar v. De La Torre*, 994 So. 2d 1032 (Fla. 2008). "The purposes of attorney discipline are: (1) to protect the public

from unethical conduct without undue harshness towards the attorney; (2) to punish misconduct while encouraging reformation and rehabilitation; and (3) to deter other lawyers from engaging in similar misconduct." *Fla. Bar v. Dupee*, 160 So. 3d 838, 853 (Fla. 2015); *see also Fla. Bar v. Phoenix*, 311 So. 3d 825, 833 (Fla. 2021).

Here, we find that the referee's recommended discipline lacks the support required by our cases. Disbarment is the appropriate sanction for Mr. Koepke under our case law and the Standards. His conduct demonstrated a willful lack of candor with the court and abuse of the legal process. We focus on the intentionality of his actions, his selfish motive, and the serious, adverse impact that his actions had on the parties and underlying case.

## A

Under Standard 5.1, "Failure to Maintain Personal Integrity," disbarment is appropriate when the attorney to be disciplined acted "intentionally," while suspension should be given when the attorney acted "knowingly." We have in the past found that the creation and filing of fraudulent legal documents for an attorney's personal gain is a basis for disbarment. *Fla. Bar v. Hall*, 49 So. 3d 1254 (Fla. 2010) (disbarring an attorney who made and filed a falsified real

estate sale agreement for her financial benefit). Mr. Koepke's decision to withhold the settlement agreement is of no meaningful difference. Even leaving aside the time during which he might plausibly have withheld it as subject to a pending motion to quash, there is the matter of his having misled the court and the parties about the fact that his personal injury case had settled; the fact that he came to court for his trial without documents the court had specifically compelled him to produce; and his failure to apprise the court of what he had to produce until it reviewed the materials in camera.

**B**

Standard 6.1 governs the sanctions for "False Statements, Fraud, and Misrepresentation" by attorneys. Under this standard, disbarment is appropriate rather than suspension when the attorney acted intentionally, caused serious injury to a party, and caused a significant adverse effect on the legal proceeding. "[D]isbarment is the presumptive sanction for an attorney knowingly presenting false testimony in a judicial proceeding." *Fla. Bar v. Cox*, 794 So. 2d 1278, 1279-80 (Fla. 2001) (ultimately imposing a one-year suspension on a prosecutor who knowingly

concealed information from the court and defendant due to "substantial mitigation"). In *Cox*, the number and qualitative weight of mitigating factors, including the lack of selfish motive and Cox grasping the serious impact of her conduct, far surpassed the single aggravating circumstance of Cox's substantial experience in the practice of law. *Id.* at 1281. Similarly, we stated that we "would have no hesitation in imposing disbarment" on the attorney in *Florida Bar v. Hmielewski*, 702 So. 2d 218, 221 (Fla. 1997), if not for mitigating factors, particularly his lack of selfish motive. We imposed a three-year suspension on Hmielewski for helping his client conceal stolen medical records and blaming their absence on the opposing party's record-keeping. We determined that Hmielewski was "overzealous in his efforts to promote his client's interests" rather than acting for personal gain. *Id.* (quoting referee's report). Here, the referee found a roughly equal number of mitigating and aggravating factors, and the aggravating factors included a selfish motive and Respondent's refusal to acknowledge the wrongful nature of his conduct. The mitigation does not support departing from the "presumptive sanction" of disbarment.

## C

Standard 6.2 is relevant when an attorney's actions involve the "Abuse of the Legal Process." The disbarment clause applies, rather than the suspension clause, when the attorney caused serious, rather than nonserious, interference with a legal proceeding or when the attorney knowingly violated a court order for his benefit.

Mr. Koepke abused the legal process in a way that resulted in a serious interference with his alimony proceedings. Representing himself as both attorney and client, he dodged discovery requests from his former wife's counsel and refused to answer questions truthfully. The trial judge "conservatively" estimated that Mr. Koepke's actions cost "100 or more hours of attorney time and hours upon hours of court time to resolve." Hearing Before Judge Donald A. Myers at 45, *In re Marriage of Koepke*, No. 1990-DR-3247 (Fla. 9th Cir. Ct., June 28, 2018). Moreover, Mr. Koepke used the delay occasioned by his failure to comply with the discovery order to hastily settle a trust to put his contingency fee funds out of reach. This was deceitful abuse of the process by someone who knew better.

**D**

Standard 7.1 applies to "Deceptive Conduct or Statements and Unreasonable or Improper Fees." Disbarment is appropriate when a lawyer "engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public, or the legal system." Again, Mr. Koepke's actions check those boxes. As an officer of the court, he owed a duty of candor that he breached with the intent to shield funds that were subject, under an order compelling production, to the court's consideration. Conduct so obstructing the court's truth-finding mission for pecuniary gain is irreconcilable with a lawyer's duties.

"The public expects and deserves fairness and candor from attorneys . . . . If we are to preserve the credibility of our self-regulated profession, we must address breaches of that trust in a manner that is commensurate with the severity of the breach." *Cox*, 794 So. 2d at 1286.

**III**

In reaching the conclusion that Mr. Koepke must be disbarred, we are mindful that divorce proceedings can bring out the worst in

people. Yet even at one's worst, we expect a lawyer's oath to mean something. Indeed, we expect the oath to mean something then especially.

Disbarment will be effective thirty days from the filing of this opinion so that Mr. Koepke can close out his practice and protect the interests of existing clients. If Mr. Koepke notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Mr. Koepke shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Mr. Koepke shall accept no new business from the date this opinion is filed.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Karl O. Koepke in the amount of $2,606.73, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.
GROSSHANS, J., recused.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, and Karen Clark Bankowitz, Bar Counsel, The Florida Bar, Orlando, Florida; and Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida,

for Complainant

Karl O. Koepke, pro se, Orlando, Florida,

for Respondent